902 F.2d 35
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Milton Leon SIMPSON, Plaintiff-Appellant, (88-6049)
v.
William MONTAGUE, Warden, et al., Defendants-Appellees. (88-6049)
Milton Leon SIMPSON, Plaintiff-Appellant, Cross-Appellee,
v.
William MONTAGUE, Warden, et al., Defendants-Appellees, (88-6050)
v.
COMPTON, Captain; Reuben Hodge, Alex Miliara,
Defendants-Appellees, Cross-Appellants. (88-6050)
 Nos. 88-6049, 88-6050.
 United States Court of Appeals, Sixth Circuit.
 May 10, 1990.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and JAMES P. CHURCHILL, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This is a civil rights action arising out of prison disciplinary proceedings conducted against the plaintiff while he was incarcerated by the State of Tennessee. The case was tried to a jury, with the plaintiff representing himself, and verdicts were directed against the plaintiff on all issues except the failure of the disciplinary hearing board to furnish the plaintiff an adequate statement of the reasons for its decision. On that issue the court made an award of nominal damages against the members of the board.
 
 
 2
 The plaintiff appeals from the directed verdicts against him and from the refusal of the district court to award him attorney fees. The board members cross appeal from the award of nominal damages. For the reasons stated below, we shall reverse the award of nominal damages but affirm the district court's rulings in all other respects.
 
 
 3
 * In January of 1980, while a prisoner in the custody of the Tennessee Department of Correction, the plaintiff was transported to Memphis, Tennessee, to give testimony in a criminal proceeding there. Upon his arrival he was placed in a two-man cell in the maximum security section of the Memphis Correctional Center.
 
 
 4
 On the evening of January 20, 1980, the plaintiff and his cellmate requested permission to go to the Center's law library. Their request was refused. The plaintiff's cellmate then began banging on the cell. After a time, security personnel decided to separate the pair. Twice the plaintiff was ordered to leave the cell, and twice he refused to do so. Six correctional officers then removed him forcibly. The officers wrote separate disciplinary charges against the plaintiff, alleging assault, disrespect, participating in a riot, refusing a direct order, and threatening an employee.
 
 
 5
 Plaintiff appeared before a three-member disciplinary board on January 22, 1980, having received copies of the charges earlier. After hearing testimony, the board found the plaintiff guilty of assaulting a correctional officer named Frizzell. As punishment, the board recommended that the plaintiff lose 135 days of good time and 135 days of honor time.
 
 
 6
 Defendant William Montague, acting warden at the Center at the time of the disciplinary hearing, conferred with the board's chairman and then signed a hearing board "action sheet" approving the recommended loss of good and honor time. The action sheet incorporated Officer Frizzell's write-up, on which the chairman told the warden the board had relied. The loss of time resulted in the plaintiff's probationary parole date being moved from February 12, 1980, to November 8, 1980. The expiration date for his sentence was moved from September 12, 1984, to June 9, 1985.
 
 
 7
 The plaintiff was advised of his right to appeal, although he was not given instructions on how to perfect such an appeal. A records department employee at the Center typed up a summary of the disciplinary board proceedings, but the plaintiff was transferred to another Corrections Department institution before the written summary was prepared, and it appears the plaintiff never received it. The plaintiff did, however, send Warden Montague a letter regarding his desire to appeal, and he subsequently filed a lengthy appeal with defendant Dorothy Greer, an Assistant Commissioner of the Department of Correction.
 
 
 8
 Commissioner Greer affirmed the disciplinary board action on April 2, 1980. The plaintiff then wrote her a letter questioning the severity of the punishment. On June 13, 1980, she restored three months of the lost good and honor time. The plaintiff was released on parole on September 9, 1980.
 
 
 9
 Meanwhile, on March 17, 1980, the plaintiff sued the members of the disciplinary board and others in federal court under 42 U.S.C. Sec. 1983. Proceeding pro se, he alleged that the board failed to provide him with a statement of facts and reasons for its decision, failed to allow him to cross-examine witnesses, and failed to allow him to present certain testimony. The plaintiff also filed a petition for a writ of habeas corpus.
 
 
 10
 The plaintiff moved for appointment of counsel in both cases. The court granted the request in the habeas case, but merely noted that a companion civil rights suit was pending. The habeas case became moot when the plaintiff was released on September 9. Two weeks later plaintiff's counsel moved to withdraw as attorney of record. The motion averred that the plaintiff had missed an appointment with counsel to discuss the Sec. 1983 action, that counsel was unable to locate the plaintiff, and that counsel had contacted another lawyer in Memphis who handled such actions and was willing to discuss the matter. The plaintiff opposed the motion to withdraw, but it was granted on November 5, 1980. The record does not reveal any subsequent motion for appointment of counsel.
 
 
 11
 The case went to trial before a jury on March 7, 1988. At the close of the plaintiff's case, the court granted a directed verdict in favor of Warden Montague and ruled out any award of compensatory or punitive damages against the remaining defendants.[1] At the close of all evidence, the court granted a directed verdict against the plaintiff on his claims of conspiracy and denial of the right to cross-examine witnesses at the disciplinary board hearing. The court directed a verdict in favor of the plaintiff on the issue of the failure to provide him the requisite statement, and the court awarded nominal damages in the amount of one dollar against defendants Compton, Miliara, and Hodge, the three members of the hearing panel. The plaintiff moved for an award of attorney fees, and the motion was denied. The plaintiff then appealed the directed verdicts for the defendants, the effective denial of the motion for counsel, and the denial of attorney fees.
 
 II
 The parties agree that
 
 12
 "[t]he standard to be applied in determining the propriety of a grant or denial of a directed verdict is whether without weighing the credibility of the witnesses or considering the weight of the evidence, there is substantial evidence from which the jury could find in favor of the party against whom the motion is made." Bellamy v. Bradley, 729 F.2d 416, 418 (6th Cir.), cert. denied, 469 U.S. 845 (1984).
 
 
 13
 As to punitive damages, the plaintiff cites no evidence suggesting that the defendants acted with intentional or reckless disregard for his rights. Absent such a showing, punitive damages are not available. Smith v. Wade, 461 U.S. 30 (1983).
 
 
 14
 Similarly, the plaintiff has not shown that he was injured by the alleged denial of cross-examination, inability to call witnesses, or withholding of fact findings. Neither has he shown that Warden Montague had any personal responsibility to ensure that the plaintiff was accorded any of these claimed rights. We agree with the district court that even if the plaintiff had received everything he wanted in the way of cross-examination, witnesses, and a summary of fact findings, there is no indication that the hearing panel would have reached a different decision or that the appeal would have been successful. We note that although the plaintiff apparently did not receive the panel's findings of fact, he was still able to secure a restoration of three months, or one-third, of the lost good and honor time.
 
 III
 
 15
 Whether to appoint counsel in a Sec. 1983 case is a matter within the sound discretion of the district court. Childs v. Pellegrin, 822 F.2d 1382, 1384-85 (6th Cir.1987). The district court "should at least consider plaintiff's financial resources, the efforts of plaintiff to obtain counsel, and whether plaintiff's claim appears to have any merit." Henry v. City of Detroit Manpower Dep't, 763 F.2d 757, 760 (6th Cir.) (en banc), cert. denied, 474 U.S. 1036 (1985). See also Childs v. Duckworth, 705 F.2d 915, 922 (7th Cir.1983), stating that once the threshold criterion of having a meritorious claim is passed,
 
 
 16
 "the other factors to be considered are whether: the litigant has the ability to investigate the factual issues in dispute; evidence introduced will be in the form of conflicting testimony, thus requiring the need for cross-examination by an attorney; the litigant is capable of presenting his own case; and the legal and factual issues are complex."
 
 
 17
 The plaintiff argues that certain remarks made by the district court in connection with the attorney fee issue indicate that these criteria were satisfied and that counsel should have been appointed. But the trial record shows that the plaintiff was in fact able to articulate his claims and make a coherent argument. He was able to present his case on direct examination. His objections to certain of defense counsel's questions were sustained. His difficulties on cross-examination did not prejudice him, and having a lawyer would not have enabled him to show that the defendants acted maliciously or that his appeal was prejudiced by the inadequate statement of facts.
 
 
 18
 There is no indication that the plaintiff made any effort to retain a lawyer on his own. The attorney appointed for him in the habeas case offered to put him in touch with another lawyer, when and if the plaintiff turned up, but the record does not show any attempt by the plaintiff to avail himself of that opportunity.
 
 
 19
 Parties who prevail in cases of this sort may be awarded reasonable attorney fees as part of their costs, see 42 U.S.C. Sec. 1988, and there is no reason to suppose that the plaintiff could not have secured professional representation if he had actually tried to and if he had actually had a promising case. We do not think the court abused its discretion by not appointing counsel when asked to do so in 1980, nor do we think the judges to whom the case was transferred over the course of the following years abused their discretion by not appointing counsel sua sponte.
 
 IV
 
 20
 The plaintiff argues that the district court erred in not awarding him a fee for acting as his own attorney. This contention is utterly without merit. Pro se litigants are not entitled to recover attorney fees. Wright v. Crowell, 674 F.2d 521, 522 (6th Cir.1982) (per curiam). Not even attorneys who proceed pro se are entitled to recover fees. Kay v. Ehrler, --- F.2d ----, No. 89-5297 (6th Cir. Apr. 13, 1990).
 
 
 21
 Under the statute, moreover, the court has discretion to award attorney fees only to "the prevailing party." The plaintiff prevailed only as to the award of nominal damages, and, for reasons to which we now turn, we do not believe that he ought to have prevailed in that respect.
 
 V
 
 22
 Defendants Compton, Miliara, and Hodge, the members of the hearing panel, claim the benefit of the doctrine of qualified immunity because it was not clearly established, in January 1980, that there was anything constitutionally wrong with findings of fact which, like those made here, simply incorporated a written disciplinary report.
 
 
 23
 In Wolff v. McDonnell, 418 U.S. 539 (1974), the Court required prison hearing boards to give prisoners "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action taken." Id. at 564 (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). The district court relied on King v. Wells, 760 F.2d 89, 93 (6th Cir.1985), in which this court rejected an argument that Wolff was satisfied when the prisoner received a misconduct ticket and report written by a guard. But in Hudson v. Edmonson, 848 F.2d 682 (6th Cir.1988), we declined to apply King retroactively. The report at issue in Hudson, reproduced in 848 F.2d at 689, is similar in form and substance to that involved in the present case. Under Hudson, the defendants in the case at bar were clearly entitled to qualified immunity.
 
 
 24
 Although the form of the report was sufficient to pass constitutional muster in 1980, the plaintiff contends that he never received the report. There is uncontroverted evidence, however, that responsibility for seeing that prisoners received hearing panel reports rested with the Memphis Center's records office. The fact that the records office failed to forward the report to the plaintiff when he was moved to a different prison does not give rise to personal liability on the part of the hearing panel members or anyone else who was not a member of the records office staff.
 
 
 25
 The judgment of the district court is AFFIRMED in all respects save the award of nominal damages against the members of the disciplinary hearing board, and in that respect the judgment is REVERSED.
 
 
 
 *
 The Honorable James P. Churchill, United States Senior District Judge for the Eastern District of Michigan sitting by designation
 
 
 [1]
 Four of the original defendants had been granted summary judgment on August 29, 1985. Although they are named as appellees in plaintiff's notice of appeal, plaintiff makes no argument that they were dismissed from the case improperly